## Provident Trust Company, Trustee, v. Robison

*Fleer & Miller,* for plaintiff.

*Russell J. Brownback,* for defendant.

FORREST, J., January 2, 1951.—This is a petition to open judgment. The essential facts are not in dispute

and as stated by petitioner are as follows: On March 4, 1922, G. Morris Robison executed a mortgage, bond and warrant to the Provident Life and Trust Company of Philadelphia, executors and trustees under the will of Samuel R. Shipley, deceased, in the principal sum of $7,500, payable within three years and secured by premises known as 235 South Twelfth Street, Philadelphia. On this property at the time there was erected a substantial brick dwelling. Robison admittedly executed these documents as a straw man and immediately conveyed subject to the mortgage to Joseph J. Derham, the real party in interest. Derham died May 18, 1928, leaving his residuary estate, including the above premises, to his wife, Christina M. Derham. Mrs. Derham continued as owner until her death on February 16, 1945. She devised all of her real estate, including these premises, to James P. Derham, her son, and an accounting of her estate has been duly filed and audited in the Orphans' Court of Montgomery County. It appears that there was no formal accounting in her husband's estate.

On or about September 13, 1930, a permit was issued to demolish the dwelling and demolition was duly commenced, completed and only a vacant lot left as security. No notice of this intended demolition was given to Robison. The Provident Trust Company appears to have had the first knowledge of this demolition on about October 3, 1930, and at that time the property was in a substantial state of demolition, but Provident failed to take any action to prevent the completion thereof. The mortgage was overdue at that time, but Provident was not the mortgagee in possession.

On or about March 14, 1934, $250 was paid on account of the mortgage and thereafter the Provident took no steps to foreclose until April 26, 1949, the interest in the meantime apparently being paid regularly. At the time foreclosure was instituted in Phila-

delphia County, where the property is situated, judgment was entered on the bond of defendant in this proceeding. Under the foreclosure the property was sold to the Provident at sheriff sale on July 5, 1949. The Provident then filed its petition under the Deficiency Judgments Act and by stipulation of counsel it was agreed that the value of the real estate foreclosed was $4,000, and pursuant to the court's decree, the Provident has filed a release of record releasing Robison of personal liability for the mortgage debt to the extent of $3,864.08, being the fair value less costs of $135.92. Thereupon damages were assessed in the present proceeding, including interest to July 21, 1950, in the sum of $4,934.79 and on October 9, 1950, the present petition was filed by defendant.

Petitioner contends that the failure on the part of plaintiff to proceed against the real owner at the time the demolition was taking place, or as soon after as it was discovered, discharged defendant from liability on the bond. Not one analogous case has been cited in support of this contention, which seems to be based on the theory that the real owner is the principal and the mortgagor defendant is the surety; and, when plaintiff allowed the demolition to take place the obligation of defendant, as surety, was discharged. There are two weaknesses to this conclusion, first of which is that defendant and his grantee do not stand as principal and surety, respectively, as to the obligation and the second of which is that in order to effect a discharge, even if such relationship did exist, there must be some "affirmative action" on the part of the alleged surety.

Now as to the first weakness. The case of Joyce, to use, et al. v. Hawtof, 135 Pa. Superior Ct. 30 (1938), explodes the contention that as to plaintiff as mortgagee, defendant, as mortgagor, and defendant's

grantee do not stand in relationship of surety and principal, respectively. The court said (p. 32):

"The appellant argues that the situation existing here is the same as if a payee on a note had released a part of the collateral security given for the payment of the note or changed the terms of the note to the injury of a surety, in which case the surety would be relieved. The two situations are not parallel, as we shall show.

"It was made clear in the Willock case that under the facts shown the mortgagor and his grantee were each liable as principal debtors to the mortgagee, each continuing liable severally for the payment of the debt (pp. 164, 165). Consequently, the authorities cited by the appellant with relation to the effect on the liability of a surety of the release of part of the security have no application. . . . The argument of the able counsel for the appellant is based upon a confusion of terms. In a number of cases the relation between the original mortgagor and the grantee of the real estate who assumes and agrees to pay the mortgage is described as one of principal and surety as between themselves. The expression 'principal and surety' does not correctly describe the relationship from the standpoint of the mortgagee."

As to the second weakness. The authorities cited by petitioners deal with cases where there was some affirmative action by the mortgagee such as releasing some part of the mortgaged premises from the lien of the mortgage, as will appear from an excerpt from Morrison v. Hartman, 14 Pa. 55, 56, which has been called to our attention:

"A creditor who lets the means of satisfaction slip from his hands, discharges his debtor's surety; but he must have had the means actually in his hands, or at least a specific lien on it. Permissive supineness will not do it."

In our case, plaintiff did nothing and that is the complaint of defendant, which does not give rise to any equitable relief.

Defendant also coincidentally and rather indirectly and hazily suggests that this being an equitable procedure we should give some relief because the injury to defendant was caused by plaintiff's passiveness and supineness. Neither can we agree with this contention since statutory law gave defendant relief from his predicament, i. e., the Act of April 28, 1903, P. L. 327, 21 PS §735-738. What was said at page 33 in the Hawtof case is fittingly applicable.

"Hawtof had at all times available to him the remedy provided by the Act of April 28, 1903, P. L. 327 (21 P. S. §§735-738). That statute entitles a mortgagor whose bond remains outstanding after conveying the property and after maturity of the mortgage, upon payment to the holder of the mortgage of the balance due upon the mortgage, to demand an assignment to him of the bond and mortgage as well as any judgment entered thereon: Kiedaisch v. Elkins Bank, supra, (p. 247). Hawtof did not avail himself of that remedy. 'The mortgagor, if he felt aggrieved at the extension, should have availed himself of the Act of 1903, and had he done so he could have placed himself in a position where no harm could come to him through the granting of this extension': Willock's Estate, supra (p. 170)."

There is another reason why defendant cannot call upon the application of equitable principles in that there is no allegation, let alone proof thereof, that if plaintiff had done what they contend that it should have done, the loss on the part of defendant would have been avoided. Nothing is alleged or proven concerning the possiblity of recouping any or all of this loss from defendant's grantee nor concerning the value of the property then or now. If defendant wishes to

apply equitable doctrines he must demonstrate facts upon which they might be predicated.

Petitioner's briefs demonstrate that a thorough research has not disclosed a citation upon which a case could be made. It would be a dangerous step to take, to discharge an obligation such as this which is so well steeped in the traditions of law and business, even if (which is not the case) equitable principles called for relief.

And now, January 2, 1951, the petition is dismissed.